**Laura L. OST, Plaintiff–Appellant,**

v.

**WEST SUBURBAN TRAVELERS LIMOUSINE, INC., Defendant– Appellee.**

No. 95–2540.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1995.

Decided July 1, 1996.

James W. Holman (argued), Cellucci, Yacobellis & Holman, Naperville, IL, for Plaintiff–Appellant.

Donald J. McNeil (argued), Lisa E. Grampo, Keck, Mahin & Cate, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Laura Ost, a limousine driver, contracted with the defendant, West Suburban Travelers Limousine, Inc. ("West Suburban" or "WSTL"), to provide her with dispatching services. Ms. Ost claimed that she was subjected to discrimination on the basis of her gender and brought this Title VII action. West Suburban moved for summary judgment. The district court granted that motion, and Ms. Ost now appeals. For the reasons discussed in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

Laura Ost owned Ost Limousine, Ltd., and was the primary driver of the limousine owned by that corporation. Ost Limousine contracted with West Suburban to provide it with dispatching services. West Suburban is an airport limousine dispatch service operating in Chicago and the surrounding six-county area. It does not maintain its own fleet of limousines; rather, it contracts with individuals, such as Ms. Ost, to provide the vehicles that it dispatches. In May 1991, after attending a one-day orientation, Ms. Ost began driving her limousine and receiving her customer assignments from West Suburban. In return for providing dispatching services, West Suburban was paid a percentage of the fares that Ms. Ost collected. West Suburban's commission was due even if the customer failed to show up or to pay for the ride; the loss of a fare was therefore absorbed by Ms. Ost.

Under her arrangement with West Suburban, Ms. Ost made her limousine available for dispatch several days a week, but she often shared the driving responsibilities with another driver. The other driver was charged a leasing fee by Ms. Ost for his use of her vehicle. Ms. Ost was responsible for all of the fees associated with owning and maintaining her vehicle. In July 1992, Ms. Ost sold her limousine and began leasing vehicles from others. At that same time, she entered into a contractual arrangement with West Suburban. That contract provided that Ms. Ost was free to contract with other

companies to provide dispatching services, that Ms. Ost could refuse to accept any assignment that was offered to her, and that she was free to establish her own driving routes (unless a customer requested a specific route). The agreement also provided that it could be terminated with seven days' written notice.

In the fall of 1991, Ms. Ost told Jay Parker, the operations manager for West Suburban, that she was interested in becoming a part-time dispatcher. The position was desirable because dispatchers who were also drivers received the most preferable driving assignments. Parker could not offer Ms. Ost a dispatcher position because none was available at that time. A year later, in August and in October 1992, two dispatcher positions became available; Ms. Ost was not offered either position, and each was eventually filled by a male driver.

In early 1993, O'Hare Airport instituted a $2 tax on each limousine departure. In response, West Suburban decided to increase its airport fares by $1 on all limousine service at the airport—arrivals as well as departures. Ms. Ost objected to the new policy and decided to fill out her weekly revenue sheets in a manner other than that required by West Suburban. When Barbara Simkus, the business manager for West Suburban, learned of the irregularity, she twice warned Ms. Ost to fill out the revenue sheets according to West Suburban's requirements. In May 1993, West Suburban management held a meeting in which Ms. Ost's revenue sheets were discussed. West Suburban claims that, because Ms. Ost had not conformed to its manner of filling out the revenue sheets and because of her "uncooperative manner" with dispatchers and customers, it decided to terminate her contract.

Ms. Ost then brought this suit, claiming that West Suburban discriminated against her on the basis of her gender. Specifically, she alleged that: (1) she was subjected to discrimination in the driving assignments she received; (2) she was discharged based on her gender; and (3) she was denied a promotion to a dispatcher position because of her gender.

The district court granted West Suburban's motion for summary judgment. It held that Ms. Ost had not shown that West Suburban met the definition of "employer" under Title VII by employing "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The evidence presented by Ms. Ost, concluded the court, did not raise a genuine issue of material fact as to whether the requisite number of employees existed.

The court also held that the defendant did not have an employer-employee relationship with its limousine drivers, but rather that the drivers were independent contractors. Although the court acknowledged that West Suburban "exercised some control over working hours by imposing disincentives for working limited days or hours," *Ost v. West Suburban Travelers Limousine,* No. 94–C–3874, 1995 WL 330911, at *3 (N.D.Ill. May 30, 1995), this degree of control did not rise to the level of establishing an employer-employee relationship.

## II

## DISCUSSION

■ We review the district court's grant of summary judgment de novo, reviewing the record in the light most favorable to the nonmoving party. *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994). With this standard in mind, we turn to the issue of whether Ms. Ost has established that West Suburban had the requisite number of employees to qualify as an "employer" for purposes of Title VII. This inquiry focuses on two groups of potential employees: first, the limousine drivers; and second, the support and managerial staff.

### A.

■ We consider first the status of the limousine drivers. We must determine whether the district court was correct in concluding that the drivers were independent contractors and not employees. If the drivers were independent contractors, they may not be counted toward the fifteen employees

required for Title VII jurisdiction.[1] The district court employed the correct analytical approach to this inquiry. It focused on the degree of control West Suburban exercised over the drivers. More specifically, it focused on the following five factors:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir.1991). Among these factors, the "employer's right to control is the most important when determining whether an individual is an employee or an independent contractor." *Id.* at 378–79. Because the district court applied the proper standard to this inquiry, we have only to review the court's factual determinations for clear error. *Id.* at 379.

■ We cannot say that the district court clearly erred when it determined that Ms. Ost was an independent contractor rather than an employee of West Suburban. Ms. Ost, who has the burden of proof on this issue, has not submitted detailed evidence of the contractual arrangement between the other limousine drivers and West Suburban. There is no evidence, however, that her arrangement was any different from that of the other drivers. Under these circumstances, and given the other evidence of record, the district court was justified in assuming that the other limousine drivers operated in much the same fashion as Ms. Ost.

The record reveals that West Suburban owned no limousines. Its drivers supplied their own vehicles and were responsible for paying all expenses associated with the ownership of the limousines, including taxes and insurance. A percentage of the fees collected by the drivers was turned over to West Suburban in exchange for the dispatching services; if a passenger failed to show up or to pay for the ride, West Suburban was still entitled to its commission and the driver had to absorb the loss. The drivers never received paychecks from West Suburban; their earnings came directly from the passengers. The drivers were able to choose to work whatever days they preferred and were free to refuse any assignments they wished. They could also choose their own routes (unless the customer requested a particular route) and could work for dispatching services other than West Suburban. Each of these facts indicates that the manner in which the drivers performed their services for West Suburban was primarily within their own control.

Ms. Ost submits that, on working days, the driver's starting time essentially was determined by West Suburban because the early morning assignments were set by West Suburban. At the end of the day, the drivers were required to call into West Suburban's dispatching service and to inform West Suburban that they were leaving the road for the day. West Suburban, in addition, required that Ms. Ost's vehicle be made available for service during certain times. Finally, she submits that her earning power was controlled by West Suburban because it set the rates and determined which drivers would receive which customers. These constraints do not, however, establish an employer-employee relationship because the details concerning performance of the work remained

---

1. Our case law previously has characterized the issue of whether a defendant is an "employer" as a matter of a federal court's subject matter jurisdiction. *See, e.g., Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 579 (7th Cir.1993) (defendant must meet definition of "employer" for federal subject matter jurisdiction to exist under Age Discrimination in Employment Act). Our recent decision in *E.E.O.C. v. The Chicago Club*, 86 F.3d 1423 (7th Cir. June 6, 1996), however, makes clear that a plaintiff's failure to establish that a defendant is an "employer" does not divest the federal courts of the power to hear the plaintiff's case. Rather, even when the defendant's status as an employer is in dispute, the case "is well within the statutory grant of federal question jurisdiction," *id.* at 1428, unless that claim is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Id.* (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974)).

essentially within the control of the driver. *See, e.g., Knight,* 950 F.2d at 380; *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir. 1979) ("If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist."). Thus, the drivers may not be counted toward the fifteen-employee minimum required to establish that West Suburban is an "employer" for purposes of Title VII.

#### B.

■ We now turn to whether West Suburban had a sufficient number of employees in its front office staff to satisfy Title VII's definition of "employer." On this question, the district court had before it two affidavits: one from Ms. Ost and one from Barbara Simkus, West Suburban's business manager. In support of West Suburban's submission that it did not meet the fifteen-employee minimum, Simkus stated in her affidavit that she had reviewed West Suburban's business records, including the employees' time sheets, for the years 1990–93, and "determined that WSTL did not employ 15 or more employees on each working day in each of twenty or more calendar weeks during those years." R. 31, para. 4. Ms. Ost's affidavit, in contrast, stated that, throughout her employment with West Suburban, she had become familiar with the office arrangement at West Suburban (staff, reservationists and dispatchers) and that she was able to determine that "there were at least twelve full-time employees within the office and at least twelve part-time employees within the office." R. 36, para. 2.

Although Title VII does not specify a procedure for counting employees, two approaches have emerged from the case law:

> One [method], endorsed by the EEOC and adopted by a number of courts, is the "payroll method." It looks at the number of employees maintained on an employer's payroll within a given week: if this number is at least 15 for at least 20 calendar weeks the jurisdictional minimum is satisfied, regardless of whether or not every employee on the payroll shows up for work every day of the calendar week.
>
> The alternative method counts all salaried employees toward the minimum, but takes a different approach toward hourly or part-time workers. Such workers are considered employees only on days when they are physically present at work or are on paid leave. The jurisdictional minimum of employees must be at the workplace or on paid leave for each day of the work week, or the week will not be counted.

*E.E.O.C. v. Metropolitan Educ. Enters., Inc.,* 60 F.3d 1225, 1227 (7th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 1260, 134 L.Ed.2d 209 (1996). Our circuit has adopted the latter approach, *see Zimmerman v. North Am. Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983), and has recently reaffirmed its adherence to that approach in *Metropolitan Educational Enterprises.* The district court analyzed the affidavits before it under this circuit's *Zimmerman* approach and held that Ms. Ost had failed to establish that West Suburban had the requisite number of employees during the appropriate time period. The court focused on the fact that Ms. Ost's affidavit fails to address whether all twenty-four employees were employed within the same time period, how many employees worked on particular days, or whether there were fifteen or more employees on each day of any particular week.

The affidavit of Ms. Ost is certainly too vague a submission to carry her burden with respect to this element as it has been interpreted by the case law of this circuit. Nor does it appear that it would suffice under the approach currently employed by several of the other circuits. As the district court noted, Ms. Ost's affidavit, significantly, did not address when the twenty-four employees worked for West Suburban. In order to meet the test of this circuit, she, as the party seeking the federal forum, was required to persuade the district court that, on each working day of at least twenty weeks during the preceding calendar year, at least fifteen of the twenty-four employees were physically present. Under the "payroll" method employed by other circuits, she was required to show that at least fifteen employees were on

the payroll during those twenty weeks. *See Vera–Lozano v. International Broadcasting,* 50 F.3d 67, 69–70 (1st Cir.1995); *Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 979 n. 7 (5th Cir.1980). Ms. Ost claimed in her affidavit to have perused and relied upon "timesheets and other documents provided by the Defendant in discovery in this matter." R. 36, para. 2. However, those documents were never made a part of the record. Ms. Ost also asserted that those twenty-four employees worked "throughout my employment." *Id.* However, as the district court noted, this level of generality does not suffice.[2] We agree that Ms. Ost has failed to raise a genuine issue of material fact as to whether West Suburban was an "employer" for purposes of Title VII.

## C.

Even if we were to conclude that Ms. Ost had raised a genuine issue of material fact as to the number of employees working for West Suburban, the record affirmatively establishes that we must uphold the judgment of the district court. *See Burda v. M. Ecker Co.,* 2 F.3d 769, 773 (7th Cir.1993) (holding that we may uphold the judgment of the district court on any basis that finds support in the record).

We turn first to Ms. Ost's claims of discriminatory treatment and discharge. The district court held that Ms. Ost had not established that there was a genuine issue of triable fact with respect to her status as an employee. The district court's determination that Ms. Ost was an independent contractor precludes two of her claims on the merits even if she had been able to establish the fifteen-employee minimum required by Title VII. Independent contractors are not protected by Title VII, *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 380 (7th Cir.1991), and summary judgment on the merits would have been appropriate on these two claims.

Ms. Ost's third claim—that she was not hired into a dispatcher position—could go forward despite her status as an independent contractor/driver. The record shows that the dispatchers were "employees," not independent contractors, of West Suburban. R. 31, Affidavit of Jay Parker, para. 19. As an applicant for an employee position, Ms. Ost was protected from discriminatory treatment by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1). However, this third claim must be resolved against her on other grounds.

Ms. Ost claims that she sought employment as a part-time dispatcher. West Suburban did not hire her, even though two dispatcher positions were available. Rather, two male drivers with less seniority than Ms. Ost were given the positions. She claims that the reason that she was not hired was because of her gender. Because Ms. Ost does not have direct evidence of discriminatory intent on the part of West Suburban in its failure to hire her as a dispatcher, her claim must proceed using the familiar burden-shifting analysis first set forth in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, she must establish a prima facie case of discriminatory intent by showing: (1) that she belongs to a protected category; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was not selected for the position; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* at 802, 93 S.Ct. at 1824; *Smith v. BMI, Inc.,* 957 F.2d 462, 463–64 (7th Cir.1992). Once a prima facie case is established successfully, the burden of production shifts to the defendant and requires that it articulate a legitimate, nondiscriminatory reason for its decision. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *E.E.O.C. v. Our Lady of Resurrection Medical Ctr.,* 77 F.3d 145, 149 (7th Cir.1996). The burden then shifts back to the plaintiff to show that the reasons offered by the defendant were merely pretextual. *Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747–48; *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995).

2. *Cf. Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986) ("vague and general" affidavit insufficient to establish that defendant was "employer" under state discrimination statute).

In support of its motion for summary judgment, West Suburban submitted the affidavits of Barbara Simkus and Jay Parker. Simkus stated that Ms. Ost was terminated because she had failed to cooperate with management in conforming to the new tax reporting requirements and because of an uncooperative attitude with dispatchers, staff members and customers. Parker stated that, in 1992, he hired two male drivers into part-time positions because they were familiar with the operations of West Suburban and with the Chicago area, they each had demonstrated flexibility in working with West Suburban and a cooperative attitude, and they had never been the subject of any customer complaints. He had not considered Ms. Ost for either of the dispatcher positions because she had expressed her interest in the position only once, nearly a year before the positions became available, and because she had been uncooperative and inflexible while working as a driver. Parker also stated that, prior to hiring the two male drivers, he had offered the position to a female secretary whom he believed to be well-qualified. She had turned down the position because of family commitments.

In response to these reasons, Ms. Ost claimed that she never received any complaints about her performance as a driver or about her alleged uncooperativeness. She also stated that, in her opinion, she was more qualified for the dispatcher positions than either of the two drivers who was hired. It is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions. *Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 481 (7th Cir.1995); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992) ("Such [self-serving] statements may create a material dispute about the employee's ability but do nothing to create a dispute about the employer's honesty— do nothing, in other words, to establish that the proffered reason is a pretext for discrimination."). Without evidence casting doubt on West Suburban's proffered nondiscriminatory reason for not hiring Ms. Ost, her claim cannot survive summary judgment. There-fore, even if it were necessary to reach the merits of her failure to hire claim, Ms. Ost did not present sufficient evidence to survive summary judgment.

### Conclusion

Accordingly, we hold that Ms. Ost failed to establish that West Suburban was an "employer" as defined by Title VII. Alternatively, we hold that Ms. Ost did not present sufficient evidence to withstand West Suburban's motion for summary judgment on her failure to hire claim.

AFFIRMED.