EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff–Appellant,

v.

NORTH KNOX SCHOOL CORPORATION and Board of School Trustees for the North Knox School Corporation, Defendants–Appellees.

No. 97–3704.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1998.

Decided Sept. 8, 1998.

Dori K. Bernstein (argued), Robert D. Unitas, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, Donita Montgomery, Equal Employment Opportunity Commission, Indianapolis, IN, for Plaintiff–Appellant.

William W. Drummy, John C. Wall (argued), Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, IN, for Defendants–Appellees.

Before MANION, KANNE, and DIANE P. WOOD, Circuit Judges.

MANION, Circuit Judge.

The EEOC sued the North Knox (Indiana) School District and its Board of School Trustees under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA), after North Knox refused to renew the contracts of two bus drivers aged 70 and 72. The district court concluded the bus drivers were independent contractors who are not covered by the ADEA, and so granted North Knox summary judgment. The EEOC appealed, and we affirm.

## Background

The North Knox School District is a "school corporation," created and empowered by state statute, and its Board of School Trustees is a "governing body" under the statute. Ind.Code §§ 20–5–1–1 through 20–5–6–7. Indiana gives school corporations the power to "transport children to and from school." Ind.Code § 20–5–2–2(9). Given the state's significant interest in the safety and welfare of the children being transported, it is not surprising that Indiana has adopted numerous statutory provisions governing school buses and their drivers. In fact, Indiana adopted an act regulating elementary and secondary school transportation, Ind. Code §§ 20–9.1–11 through 20–9.1–7–4, and created the State School Bus Committee, which promulgates administrative regulations. Ind.Code §§ 20–9.1–4–1 & 4–4.

Under the statute, a school corporation has four options when it chooses to provide transportation: First, it can buy buses for itself and enter into "employment contracts" with drivers who are employed by the school corporation "in the same manner as other non-instructional employees." Ind.Code § 20–9.1–2–3. Second, it can enter into "transportation contracts" with a person who supplies both the bus and the driving services. Ind.Code § 20–9.1–2–4. Third, it can enter into "fleet contracts" with someone who provides two or more buses and drivers. Ind.Code § 20–9.1–2–4.1. Finally, it can enter into "common carrier contracts" with "any regular route common carrier that operates under the jurisdiction of the department of state revenue." Ind.Code § 20–9.1–2–25. Historically, North Knox has chosen the "transportation contract" option, although at oral argument North Knox's counsel informed us that in the most recent series of contracts North Knox entered into some fleet contracts as well. As required by statute, North Knox seeks bids for each of its routes, and awards the route to the lowest bidder. See Ind.Code 20–9.1–2–4.2. North Knox has a policy of permitting an incumbent driver to retain his route even if he was not the lowest bidder, so long as he is willing to match the lowest bid. North Knox's transportation

contracts have four-year terms, the longest permitted by statute. Ind.Code § 20–9.1–3–1(g).

The two drivers at issue in this case, Alvin Schuckman and Marlen Schultz, had entered into multiple transportation contracts with North Knox. Schuckman had successive contracts from 1965 to 1993—seven four-year contracts—and Schultz from 1985 to 1993—two four-year contracts. In 1993, both Schuckman and Schultz were low bidders on at least one route. But that year, the Board of School Trustees adopted a policy against contracting with drivers 70 years of age or older, so because Schuckman was 70 and Schultz was 72, the Board rejected their bids. Each then filed a complaint with the EEOC, which eventually filed this suit on their behalf, alleging that North Knox's refusal to enter into contracts with Schuckman and Schultz violated the ADEA. The district court granted North Knox's motion for summary judgment after concluding that Schuckman and Schultz were independent contractors and so not covered by the ADEA. The EEOC then appealed.

### Analysis

We review the grant of summary judgment *de novo. Cowan v. Prudential Ins. Co. of America,* 141 F.3d 751, 755 (7th Cir.1998). Summary judgment is proper if the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, we view the record facts in the light most favorable to the EEOC, the non-moving party. *Cowan,* 141 F.3d at 755. The factual record is largely undisputed.

■ Two aspects of the EEOC's argument on appeal can be disposed of preliminarily. The EEOC's brief recites various "misstatements" in the district court's opinion, such as the district court's mistaken belief that the state required North Knox to provide transportation rather than merely giving it the option. North Knox concedes the court was mistaken but argues such a misstatement is immaterial. The misstatements are irrelevant unless they reflected a misunderstanding of the record that led the

district court to reach an incorrect decision, that is, to render an erroneous judgment. We may even affirm a grant of summary judgment "on a ground other than that relied upon by the district court below, so long as the alternative basis finds adequate support in the record." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996); *see also Cook v. Niedert,* 142 F.3d 1004, 1012 (7th Cir.1998) ("We decline to remand on account of what amounts to no more than a slip of the pen.").

■ The EEOC also complains that North Knox did not raise its independent contractor argument when the parties were engaged in conciliation efforts prior to the EEOC filing suit or for the first 18 months of this litigation. North Knox did not raise it in fact until after the time for filing motions for summary judgment had passed. But the EEOC did not seek additional discovery to counter this "late" asserted ground for summary judgment as it could have under Fed. R.Civ.P. 56(f). The issue, although mainly raised by the district court, was dispositive. This court must respect the district court's discretion in "manag[ing] the conduct of litigation in its court room." *In re Scheri,* 51 F.3d 71, 75 (7th Cir.1995). The EEOC does not suggest that the district court abused its discretion or that the EEOC was prejudiced in any way. In fact the EEOC does not allege any specific error. Thus its generalized complaints about the timing of North Knox's summary judgment motion, like its generalized complaints about the district court's "misstatements," are not persuasive. With these preliminary matters out of the way, we can turn to the claim of age discrimination in not renewing the bus drivers' contracts.

■ The ADEA prohibits *"an employer ... [from] fail[ing] or refus[ing] to hire or to discharge any individual ... because of such individual's age."* 29 U.S.C. § 623(a)(1) (emphasis supplied). Because "employers" only "hire" and "discharge" employees, courts have excluded independent contractors from the ADEA's protection. *See Hayden v. La–Z–Boy Chair, Co.,* 9 F.3d 617, 619 (7th Cir. 1993) (citing *Garrett v. Phillips Mills, Inc.,*

721 F.2d 979, 980 (4th Cir.1983)); *see also Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir.1991) (independent contractor may not bring Title VII sexual harassment claim); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (excluding independent contractors from ERISA coverage). The ADEA, like Title VII and ERISA, does not further define "employee." *See* 29 U.S.C. § 630(f) (defined as "an individual employed by any employer"); *also Darden*, 503 U.S. at 323, 112 S.Ct. 1344 (virtually identical definition in ERISA "completely circular and explains nothing"). Courts have thus developed their own analyses to distinguish employees from non-employees such as independent contractors. In *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.1979) (Title VII), the court adopted an "economic realities" test, which "calls for application of general principles of the law of agency to undisputed or established facts." This analysis has generally been accepted, including by this court, *Knight*, 950 F.2d at 378–79 (Title VII), and by the Supreme Court, *Darden*, 503 U.S. at 322–24, 112 S.Ct. 1344 (ERISA).

In *Knight*, we listed the five factors on which the district court had focused in that case, noting that those factors encompassed all the factors of the more lengthy tests employed by other courts. 950 F.2d at 378–79 & n. 2. The Court in *Darden* quoted the twelve factors it had listed in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), 503 U.S. at 323–24, 112 S.Ct. 1344, but the Court emphasized that the specific factors on a list are not dispositive: "Since the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" 503 U.S. at 324, 112 S.Ct. 1344

(quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)). In *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 492 n. 1 (7th Cir.1996), we concluded that the *Darden* factors were all subsumed within the five-factor *Knight* analysis. Those five factors are:

(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 492 (internal quotation omitted). In *Knight*, we stated that "[o]f several factors to be considered, the employer's right to control is the most important when determining whether an individual is an employee or an independent contractor." 950 F.2d at 378. The ultimate question of whether an individual is an employee or an independent contractor is a "legal conclusion" which involves "an application of the law to the facts." *Id.* at 379.[1]

The first and most significant factor requires us to look at the amount of "control" or "supervision" that North Knox exerted over the drivers. The EEOC asserts that North Knox extensively "controlled" the drivers' conduct, to which North Knox responds that the "control" the EEOC points to is nothing more than the state's extensive regulation of school bus drivers. We will not recite all of the Indiana statutory and regulatory provisions that regulate the conduct of persons who enter into "transportation contracts" with school corporations. For our purposes it is sufficient to note that school bus drivers in general—and "transportation

---

1. We must reject, then, the EEOC's assertion that where the record contains at least some facts that favor a finding that the individual in question is an employee, there is a material factual dispute precluding summary judgment for the defendant. That argument assumes the ultimate question whether a hired party is an independent contractor is one of fact, which it is not. Here, we take the factual record as we must on summary judgment and ask whether it shows the drivers were independent contractors, which, as we held in *Knight*, is a question of law for the court.

contractors" specifically—are highly regulated. For example, a bidder cannot be awarded a contract unless he first obtains a certificate of physical fitness from a physician, Ind.Code § 20–9.1–2–10(a), which certificate states he has certain specified physical abilities and does not have specified physical disabilities, *see* Ind.Code § 20–9.1–3–1(g). Also, no one may drive a school bus unless he "is of good moral character" and does not drink alcohol "to excess at any time." Ind. Code § 20–9.1–3–1(a) and (c). Of course, anyone who drives a school bus must have the appropriate Indiana chauffeur's license. Ind.Code § 20–9.1–3–1(f). But all of these sorts of regulations are insufficient to show the drivers were employees of North Knox. These regulations reflect only Indiana's significant regulation of the conduct of school bus drivers, who are, of course, persons who could have a serious impact on the safety and welfare of school children. These state regulations reflect no "control" by North Knox, the putative employer here. In fact, the state, not North Knox, controls these factors. If, for some reason, North Knox wished to contract with a person of bad "moral character" to drive a bus, it could not; that choice has been taken away by the state. Conversely, this court has held that the state's extensive regulation of teachers employed by local school districts did not make the teachers the "indirect" employees of the state in discrimination cases because the state did not hire and fire. *EEOC v. State of Illinois,* 69 F.3d 167, 171 (7th Cir.1995). If extensive state regulation does not make one an employee of the state, these same regulations certainly would not impose employer status on a school corporation that must follow such regulations. *See also Local 777, Democratic Union Organizing Committee v. NLRB,* 603 F.2d 862, 875 (D.C.Cir.1978) ("Government regulations constitute supervision not by the employer but by the state.").

As other examples of North Knox's "control" and "supervision," the EEOC cites to the detailed specifications in the transportation contracts, which set "the precise route and schedule of each driver." And the EEOC contends that North Knox "controls" the drivers because it "limits the number of times and permissible reasons a regular driv-

er may be absent, requiring him to obtain a substitute driver from a list approved by the Board." Also North Knox requires the drivers to enforce its disciplinary policies but "restricts the disciplinary tools available to bus drivers and retains the ultimate authority to sanction pupil misconduct. The drivers are not free to set their own rules for appropriate behavior, and have little discretion to select or administer punishment." Surely the EEOC would not expect each driver under contract to have his or her own standards for discipline and punishment in order to be labeled independent. Again North Knox correctly responds that each of these "controls" is dictated by statute, so to that extent what we have said about the other state regulations applies with equal force. But we see a deeper flaw in the EEOC's argument. Certainly one can "control" the conduct of another contracting party by setting out in detail his obligations; this is nothing more than the freedom of contract. This sort of one-time "control" is significantly different than the discretionary control an employer daily exercises over its employees' conduct. An example of control set by contract would be a government entity contracting with an independent contractor to perform some service, such as building military equipment, and dictating the terms of the service to be performed with precision. That is, of course, the basis of the "government contractor defense." *See Boyle v. United Technologies, Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (defense requires "reasonably precise" government specifications); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997–98 (7th Cir.1996). The precise specifications do not make the contractor an employee of the government. Of course an employment contract may also precisely set out the obligations of the parties, so we do not suggest that precise contractual obligations necessarily show that the hired party is an independent contractor. But they certainly do not, as the EEOC suggests, necessarily show he is an employee. There is nothing significant, for example, in North Knox requiring as a term of the contract that a driver begin his route at a certain time. This permits the parents and children to know when the bus will arrive at

each stop and ensures that the children will arrive at school on time. If North Knox failed to specify this term and similar ones, the transportation contracts would be less valuable to it.

The EEOC also argues that North Knox's control is shown by its power to terminate drivers. Again, this power is set by statute. North Knox can terminate a transportation contract only for specified reasons, and the drivers had a general right to a hearing prior to termination. *See* Ind.Code § 20–9.1–2–18 ("transportation contract may be terminated for incompetency, physical disability, negligence or failure to faithfully perform his duties under the contract only after the driver has received notice and a hearing"); Ind. Code § 20–9.1–2–19 ("A transportation contract may be terminated without hearing upon presentation of reliable evidence that a driver has consumed any alcoholic beverage during school hours, or while operating a school bus or while performing his duties."). The power to terminate a contract for material breach is a general right of all contracting parties, *see, e.g., American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 599 (7th Cir.1986) ("If you commit a material breach of contract, the other party can walk away without liability."), so there is nothing significant in North Knox's limited power to terminate the contracts here. The EEOC also argues that North Knox supervises and disciplines drivers by monitoring their performance and taking it into account when deciding whether to enter into a new contract with an incumbent driver. But this in no way distinguishes these drivers from any independent contractor. It would be odd for someone not to take past performance into account when deciding whether to enter into a new contract.

The EEOC also argues that North Knox could "unilaterally modify a route or increase a driver's pupil load." "[W]hether the hiring party has the right to assign additional projects to the hired party," *Darden*, 503 U.S. at 323, 112 S.Ct. 1344, is a factor that can show "control." The Board's power to alter a route is dictated by statute, Ind. Code § 20–9.1–2–12, and if it increases the number of miles in the route, the driver must be compensated for the proportional increase. *Id.* Similarly, the statute permits the Board to require a driver to supply equipment with a greater seating capacity than set in the contract so that he could carry more students. Ind.Code § 20–9.1–2–13. Such a change might lead to canceling the existing contract and renegotiating a new one. *Id.* The power to make these changes, of course, is necessary because during the term of a four-year contract the number and locations of children to be transported will almost certainly change. But the requirement that an increased route be met with increased compensation or that a change in pupil load could lead to canceling the contract does not show that North Knox exercised the control of an employer. It shows nothing more than that the two contracting parties—or more precisely the state legislature—expected some changes in circumstances and adequately provided for them in the contract.

In short, the record before us fails to show that North Knox exercised any significant control over the bus drivers beyond the "control" mandated by statute or the "control" set by the obligations of the contract. This factor does not favor a finding that the drivers here were employees.

The second *Knight* factor requires us to look at the kind of occupation and the skills required. This factor favors a finding of neither independent contractor nor employee because bus drivers in particular, or professional drivers in general, could be either employees or independent contractors. The statute specifically provides for bus drivers employed by the school corporation to drive buses owned by the school. It is the third factor, the "responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations," *Alexander*, 101 F.3d at 492, that we find most persuasive here. Under the transportation contracts the drivers were required to supply their own buses and absorb all costs such as insurance and maintenance. This is a strong indication that the drivers were independent contractors. One would not be surprised to learn that an employee had to bring his own tools or uniform to work, but it is hard to imagine an employee

who is required to supply his own school bus, and the EEOC does not cite, nor have we found, any case that could support such a notion. Rather the EEOC tries to downplay this factor by returning to its "control" theme, arguing that the drivers are employees because North Knox strictly controls the uses to which they can put their buses when they are not transporting children. Again, this limitation is mandated by statute. Ind. Code §§ 20–1.9–5–1 through 209.1–5–9. With the permission of the Board, other than transporting students on the designated route, a driver can use his bus only for certain activities, such as transporting senior citizens, Ind.Code § 20–9.1–5–1.5, or transporting agricultural workers, Ind.Code § 20–9.1–5–6. The EEOC argues that this limitation removes the entrepreneurial element of the driver purchasing a school bus because North Knox strictly limits the revenue he can earn with his bus. Thus, the argument goes, these drivers are unlike the limousine drivers we found were independent contractors in *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir.1996), where "the drivers were able to choose to work whatever days they preferred and were free to refuse any assignments they wished." *Ost* involved a much different situation. The driver-owner in *Ost* received no money from the limousine service; all of her income came directly from her passengers, so the driver's earnings depended on how many assignments she took. In this case, the driver-owner knows that the revenue he can earn from his bus in addition to the revenue from the contract with North Knox will be quite limited. His contract bid must take into account these opportunity costs, and his bid would presumably be higher than if he were free to earn additional revenue. In that regard, the limitation on uses to which the bus can be put is no different than the requirement that the buses be well maintained, which also increases the amount the driver must bid because bus maintenance is an operating cost for the driver. But Indiana does not want ill-maintained school buses, for obvious reasons, just as it does not want school buses put to any use the driver-owner sees fit. North Knox probably pays more for transportation as a result, but that does not make the driver-owners any less entrepreneurs. This factor instead favors a finding that the drivers were independent contractors.

The fourth factor, the "method and form of payment and benefits," *Alexander*, 101 F.3d at 492, also favors a finding that the drivers were independent contractors. The compensation in the transportation contracts was based on a per-mile rate. This rate fluctuated monthly based on changes in the price of fuel, as permitted by statute. Ind.Code § 20–9.1–2–13.5. The drivers received no benefits other than their contractual compensation, and the compensation was set by a bidding process, with the low bidder being awarded the contract, which is usual for independent contractors. Also significant under this factor is "the tax treatment of the hired party." *Darden*, 503 U.S. at 324, 112 S.Ct. 1344. North Knox did not treat these drivers as employees for tax purposes or unemployment compensation benefits and did not issue the drivers a W–2, which would have been appropriate if their compensation had been salary or wages. Rather, North Knox issued them Form 1099s, which would be appropriate for independent contractors. And for tax purposes, Schuckman and Schultz treated themselves as sole proprietorships, listing their incomes on Schedule C, supported by the 1099s. Each one also paid self-employment tax on form SE for Social Security. Like the last factor, this one too strongly favors finding these drivers were independent contractors.

The fifth factor, the "length of job commitment and/or expectations," also favors finding these drivers to be independent contractors. The length of the commitment was four years, which was set as a maximum term in the contracts. The EEOC argues that North Knox's policy of permitting incumbents to match the lowest bid created an expectation of long-term employment. We disagree. Neither driver was guaranteed renewals of his contracts: Renewal was only possible if the driver was the lowest bidder or could match the lowest bid, and by statute North Knox could reject any bid. Ind.Code § 20–9.1–2–11. As it turns out, Schuckman did drive a bus for a long time. But he never

had a commitment from North Knox for more than four years. He was in the business of providing school bus transportation, and we have no doubt that he expected his business relationship with North Knox to continue so long as he provided good services under the contract and could continue to be the lowest bidder, or at least match the lowest bid. But that expectation did not make him an employee.

In short, the district court correctly held that Schuckman and Schultz were independent contractors and thus not covered by the ADEA.

Before closing, we wish to comment on the EEOC's decision to bring this suit and to pursue it this far. Given the state statute, the issue of whether these drivers were independent contractors was not a particularly close question. The EEOC admits that it disagrees with this court's holding that independent contractors are not covered by the ADEA, and the EEOC's position in this suit seems to be an attempt to reverse that holding by arguing for an unprecedented expansion of who qualifies as an "employee." Perhaps there will be times when an agency is justified in litigating a test case to challenge the boundaries of a legal rule. But we question the wisdom of choosing to litigate such a case against a school corporation, requiring it to spend its limited resources defending this suit rather than educating students.[2]

The judgment of the district court is AFFIRMED.

---

2. Even assuming that the drivers here were covered by the ADEA, we question whether the EEOC had a valid claim on the merits. The ADEA provides employers with an affirmative defense "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the business," 29 U.S.C. § 623(f)(1), and North Knox asserted here that its policy against accepting bids from drivers aged 70 or older was just such a BFOQ. The Supreme Court has approved a two-step process for evaluating whether an age-based qualification is justified by safety interests. *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 412–17, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (whether the age-based job qualification is "reasonably necessary" to the overriding interest in public safety, and whether the employer is compelled to rely on age as a proxy for those safety-related job qualifications). The EEOC would seemingly acknowledge that, when transporting school children, limiting bids for four-year contracts to drivers under 70 would easily meet the *Criswell* test. *See also Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir.1976).