RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WALID JAMMAL; KATHLEEN TUERSLEY; CINDA J. DURACHINSKY; NATHAN GARRETT,

　　　　　*Plaintiffs-Appellees*,

v.

AMERICAN FAMILY INSURANCE COMPANY; AMERICAN FAMILY MUTUAL INSURANCE COMPANY; AMERICAN FAMILY LIFE INSURANCE COMPANY; AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN; AMERICAN FAMILY TERMINATION BENEFITS PLAN; RETIREMENT PLAN FOR EMPLOYEES OF AMERICAN FAMILY INSURANCE GROUP; AMERICAN FAMILY 401K PLAN; GROUP LIFE PLAN; GROUP HEALTH PLAN; GROUP DENTAL PLAN; LONG TERM DISABILITY PLAN; AMERICAN FAMILY INSURANCE GROUP MASTER RETIREMENT TRUST; 401K PLAN ADMINISTRATIVE COMMITTEE; COMMITTEE OF EMPLOYEES AND DISTRICT MANAGER RETIREMENT PLAN,

　　　　　*Defendants-Appellants*.

No. 17-4125

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-00437—Donald C. Nugent, District Judge.

Argued:  July 31, 2018

Decided and Filed:  January 29, 2019

Before:  BOGGS, CLAY, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Pierre H. Bergeron, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellants.  Charles J. Crueger, CRUGER DICKINSON LLC, Whitefish Bay, Wisconsin, for

Appellees. **ON BRIEF:** Pierre H. Bergeron, Lauren S. Kuley, Scott W. Coyle, Colter Paulson, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, Gregory V. Mersol, Gilbert Brosky, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellants. Charles J. Crueger, Erin K. Dickinson, CRUGER DICKINSON LLC, Whitefish Bay, Wisconsin, Gregory F. Coleman, GREG COLEMAN LAW PC, Knoxville, Tennessee, Edward A. Wallace, Kara A. Elgersma, WEXLER WALLACE LLP, Chicago, Illinois, Drew T. Legando, LANDSKRONER GRIECO MERRIMAN, LLC, Cleveland, Ohio, for Appellees. J. Philip Calabrese, PORTER WRIGHT MORRIS & ARTHUR LLP, Cleveland, Ohio, C. Darcy Copeland Jalandoni, PORTER WRIGHT MORRIS & ARTHUR LLP, Columbus, Ohio, Shay Dvoretzky, JONES DAY, Washington, D.C., Paulo B. McKeeby, Ronald E. Manthey, MORGAN, LEWIS & BOCKIUS LLP, Dallas, Texas, Mary Ellen Signorille, AARP FOUNDATION LITIGATION, Washington, D.C., Seth R. Lesser, KLAFTER OLSEN & LESSER LLP, Rye Brook, New York, for Amici Curiae.

BOGGS, J., delivered the opinion of the court in which ROGERS, J., joined. CLAY, J. (pp. 16–25), delivered a separate dissenting opinion.

––––––––––––––––––

**OPINION**

––––––––––––––––––

BOGGS, Circuit Judge. In this class action, the named plaintiffs represent several thousand current and former insurance agents for American Family Insurance Company and its affiliates (collectively, "American Family" or "the company"). The agents claim that American Family misclassified them as independent contractors, while treating them as employees, in order to avoid paying them benefits in compliance with the Employee Retirement Income Security Act of 1974 ("ERISA").

The sole issue in this interlocutory appeal concerns the nature of the parties' legal relationship: are the plaintiffs employees or independent contractors for American Family? The company appeals the district court's judgment that the plaintiffs are employees. Because American Family properly classified its agents as independent contractors, we reverse.

# I

As with many insurance companies, American Family sells its products primarily through a network of insurance agents.  American Family, in keeping with common industry practice, classifies its agents as independent contractors rather than employees.

Taking issue with this designation and the consequences it has on their ability to enjoy the protections of ERISA, the plaintiffs brought a proposed class action against American Family in 2013, alleging that the company misclassified them as independent contractors. The plaintiffs contended that their miscategorization "deprived [them] of the rights and protections guaranteed by state and federal law to employees, including their rights under ERISA."  They sought, *inter alia*, a declaratory judgment that they are employees for all purposes, including but not limited to ERISA, and that as employees they are due benefits under ERISA.

Both parties filed several pre-trial motions, including motions by American Family to dismiss and later for summary judgment.  The plaintiffs, for their part, moved for class certification.  The district court granted the plaintiffs' motion and denied each of American Family's motions in whole or in part.  The company sought permission from this court to appeal the district court's order granting class certification, but we denied the company's request.  The district court subsequently denied two motions by American Family to decertify the class.

The case then proceeded to trial, which the district court bifurcated to allow for determination of the threshold question of the plaintiffs' employment status.  Trial of this single issue took place before an advisory jury, pursuant to Federal Rule of Civil Procedure 39(c)(1), which permits district courts to "try any issue with an advisory jury" in an action that is "not triable of right by a jury."[1]

During the twelve-day trial, the jury learned that the parties took many steps to structure their relationship consistent with American Family's position that its agents are independent contractors.  Most pointedly, at the outset of the agents' tenure with the company, all agents

---

[1]Plaintiffs seeking relief under ERISA generally have no right to have their claims decided by a jury.  *See, e.g.*, *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 882–83 (6th Cir. 1997); *Bair v. Gen. Motors Corp.*, 895 F.2d 1094, 1096–97 (6th Cir. 1990).

signed a written agreement stating that they were independent contractors rather than employees. In keeping with this designation, the agents file their taxes as independent contractors and deduct their business expenses as self-employed business owners. American Family also pays its agents in commissions and does not provide them with vacation pay, holiday pay, sick pay, or paid time off.

Moreover, as the district court recounted, "[t]he company calls its agents 'business owners' and 'partners' and tells new agents they will be 'agency business' owners and that they need to 'invest' in 'their business.'" The agents work out of their own offices, set their own hours, and hire and pay their own staff. They also are responsible for providing most of the resources necessary to run their agencies, such as office furniture and office supplies.

But the plaintiffs also presented significant evidence to support their claim that American Family treats them more like employees than independent partners and business owners. The company classifies everyone in its sales force—other than its agents—as employees. Nevertheless, the company's training manuals refer to the agents as "employees." Each agent must report to an Agency Sales Manager, and the plaintiffs presented testimony that American Family did not train these managers to treat the agents as independent contractors or even make the managers aware that the agents were classified as such.

According to the plaintiffs, the managers exerted a great amount of control over their day-to-day activities. The managers insisted, among other required tasks, that the agents complete daily activity reports, prioritize selling certain insurance policies, and participate in "life-call" nights in which the agents had to stay after normal business hours to solicit life insurance by calling prospective customers. The plaintiffs also offered testimony that the company retained some authority to approve or disapprove of the location of the agents' offices and to be involved in the hiring and firing of the agents' staff in a way that limited the plaintiffs' ability to run their own agencies.

The jury also heard testimony that American Family teaches agents everything they need to know to become licensed, run an agency, and sell the company's products. All agents attend a two-to-three-month-long comprehensive training program run by American Family on how to

sell insurance and how to operate an agency.  Once hired, the agents must sell insurance exclusively for American Family, and they are discouraged—but not forbidden—from taking other work, even if it is unrelated to the insurance industry.  There is no limit on the duration of the agency relationship, and American Family describes the agency position as a career position. Although the agents are not eligible for the same pension or retirement plans given to the company's employees, they are offered an "extended earnings" benefit that is described to them as a retirement plan.**²**  When and if their relationship with the company does come to an end, the agents are prohibited for a year from soliciting business from any of their former American Family customers.  And unlike most business owners, the agents cannot sell their agencies or assign any rights to income from their agencies.

At the close of the trial, the court presented the advisory jury with the following interrogatory:

> Please answer the following question "yes" or "no" according to your findings: Did Plaintiffs prove by a preponderance of the evidence that they are employees of Defendant American Family?

The jury answered "yes."

After giving the parties a final opportunity to present their proposed findings of fact and conclusions of law, the court issued an opinion in which it acknowledged that although it was not bound by the advisory jury's determination, it believed that the jury's verdict "comport[ed] with the weight of the evidence presented at trial."  Accordingly, the district court determined that the agents were employees for the purposes of ERISA.

The district court certified its ruling for an interlocutory appeal under 28 U.S.C. § 1292(b), and American Family filed a petition for interlocutory review of the court's order.

---

**²**The "extended earnings" program offered a lifetime annuity to agents and was reported as one of American Family's "Defined Benefit Plans" in its annual statement filed with insurance regulators. Agents were automatically enrolled in these plans, did not contribute to these plans, and received increasing benefits with increasing years of service.

We granted permission to appeal, which American Family did, arguing that the district court erred in determining that the plaintiffs are employees.**³**

**II**

**A**

The determination of whether a plaintiff qualifies as an employee under ERISA is a mixed question of law and fact that a judge normally can make as a matter of law. *See Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004); *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir. 1989). After a bench trial to determine a plaintiff's employment status, this court typically reviews a district court's factual findings for clear error and its legal conclusions, including its ultimate decision about the plaintiff's status, de novo. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011). However, "[o]n interlocutory appeal under 28 U.S.C. 1292(b), our review is limited to the district court's conclusions of law." *Sheet Metal Emp'rs Indus. Promotion Fund v. Absolut Balancing Co.*, 830 F.3d 358, 361 (6th Cir. 2016). We review those conclusions de novo, but "we have no authority to review the district court's findings of fact." *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines*, 463 U.S. 85, 90 (1983). The plaintiffs brought this action under 29 U.S.C. § 1132(a), which enables "participant[s]" in an employee benefit plan to enforce ERISA's substantive provisions. Under ERISA, a "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). Therefore, the plaintiffs can prevail on their ERISA claims only if they can show that they were American Family's employees. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 321 (1992).

ERISA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). An "employer," in turn, "means any person acting directly as an employer, or

---

**³**The company also contends that the court's determination was erroneous because it relied on non-representative class evidence. Because we decide the case on other grounds, we do not reach this issue.

indirectly in the interest of an employer, in relation to an employee benefit plan." § 1002(5). Because these definitions provide little guidance as to the meaning of "employee," "the Supreme Court has instructed courts to interpret the term by 'incorporating the common law of agency.'" *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 352 (6th Cir. 2011) (quoting *Ware v. United States*, 67 F.3d 574, 576 (6th Cir. 1995) (citing *Darden*, 503 U.S. at 322–24)).

In *Darden*, the Supreme Court provided the following standard "for determining who qualifies as an 'employee' under ERISA." 503 U.S. at 323.

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). In addition to these factors ("the *Darden* factors"), we have held that an express agreement between the parties concerning employment status is also a relevant consideration. *See Weary*, 377 F.3d at 525.

The "crux of *Darden*'s common law agency test is 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Ibid.* (quoting *Darden*, 503 U.S. at 323). Thus, "our analysis of [the *Darden*] factors . . . reflects upon, and is relevant to, this core issue of control." *Ibid.* "[T]he relative weight given each factor may differ depending upon the legal context of the determination." *Ware*, 67 F.3d at 578. "Notwithstanding this recognition that certain factors may deserve added weight in some contexts, a court must evaluate *all* of the incidents of the employment relationship." *Ibid.*; *see also Darden*, 503 U.S. at 324 ("Since the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one

factor being decisive.'" (alteration in original) (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)).

Applying the test from *Darden* and its progeny, the district court determined that the plaintiffs were employees rather than independent contractors. After deciding that the *Darden* factors were "almost evenly split between favoring employee status and favoring independent contractor status," the court proceeded to a broader analysis of the level of control that American Family exercised over its agents. Ultimately, the court concluded that "[t]he degree of control managers were encouraged to exercise was inconsistent with independent contractor status and was more in line with the level of control a manager would be expected to exert over an employee." This, along with the evidence related to the other *Darden* factors, led the court to determine that the plaintiffs were employees during the relevant class period.

B

Since in this interlocutory appeal we may review only the district court's conclusions of law, we must first decide which of the court's determinations were matters of law and which were factual. This much is clear: the district court's findings underlying its holding on each of the *Darden* factors are factual findings, and the court's ultimate conclusion as to whether the plaintiffs were employees is a question of law.

But what of the court's conclusions about the *Darden* factors—both of their existence and of the weight to be assigned them? Are these factual findings or conclusions of law? Although neither party has provided much briefing on this question, the plaintiffs suggest that these are issues of fact, while American Family claims that they are issues of law. The parties' dispute is understandable, as we have yet to clarify whether and to what extent a court's conclusions about the individual factors that make up the *Darden* standard are factual or legal in nature. Indeed, some of our decisions seem to be in tension with one another, with some indicating that a district court's determinations on the *Darden* factors are factual findings, *see Peno Trucking, Inc. v. C.I.R.*, 296 F. App'x 449, 454–60 (6th Cir. 2008) (stating, first, that the appropriate rule is to review factual findings for clear error and, second, that the Tax Court's findings about control and other factors were not clearly erroneous); *Moore v. Lafayette Life Ins.*,

458 F.3d 416, 440 (6th Cir. 2006) (concluding that the district court's findings on *Darden* factors were not clearly erroneous), and others suggesting that they are legal conclusions, *see Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 473–74 (6th Cir. 2008) (describing the proper tests for the control factor and skill-required factor); *Weary*, 377 F.3d at 526 (explaining that a certain degree of limited authority is not the type of control that establishes an employer-employee relationship); *id.* at 532 (arguing that the majority erred in defining the skill-required factor and explaining what the "legal issue" is concerning that factor) (Clay, J., dissenting).

Other circuits, however, have explicitly considered this question and have come down on the side of treating these as factual matters subject to review for clear error. According to our sister circuits:

> The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law. Thus, a district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of employment status is *de novo*.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) (applying multi-factor "economic reality" test to claim under FLSA); *Berger Transfer & Storage v. Cent. States, Se. and Sw. Areas Pension Fund*, 85 F.3d 1374, 1377–78 (8th Cir. 1996); *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989).

Granting due weight to our own and our sister circuits' jurisprudence, we do not agree that a district court's conclusion relating to the existence and degree of each *Darden* factor is entirely a question of fact. There is a distinction between a lower court's factual findings, which we review for clear error, and "the district court's application of the legal standard to them," which we review de novo. *Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518, 522 (6th Cir. 2011). The lower court's determination of a *Darden* factor often necessarily involves the application of a legal standard to particular factual findings. Take, for example, *Darden*'s first factor: "[W]hether the skill [required of an agent] is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere." *Weary*, 377 F.3d at 532 (Clay, J., dissenting); *see also Darden*, 503 U.S. at 323. As Judge Clay observed in his dissent in *Weary*, there is a "legal issue" inherent in the first factor as to whether

to consider "the amount of skill required" or rather "whether the skill is an independent discipline (or profession) that is separate from the business." *Weary*, 377 F.3d at 532 (Clay, J., dissenting). Each *Darden* factor is thus itself a "legal standard" that the district court is applying to the facts. *See also Ware*, 67 F.3d at 576 (distinguishing the "facts and circumstances" underlying the *Darden* factors from both "*the legal meaning and weight* that those facts should be given *individually and in the aggregat*e") (emphasis added). It is therefore appropriate for us to review de novo those determinations to the extent that they involve the application of a legal standard to a set of facts.

What's more, as we recognized in *Ware*, "the relative weight given to each [*Darden*] factor may differ depending upon the *legal context* of the determination." *Id.* at 578 (emphasis added). Thus, for example, "a hiring party's control is more relevant in the context of copyright ownership, because the statute assigns ownership on the basis of authorship unless the parties explicitly agree otherwise," but "less important in an ERISA context." *Ibid.* This implies that certain factors may carry more or less weight depending on the particular legal context in which the independent-contractor relationship is being determined. *Ibid.* (noting that the "same test might produce disparate results in different contexts"). Accordingly, it is also appropriate for us to review de novo the district court's weight assigned to of each of the *Darden* factors, given the legal context in which the claim has been brought.

## III

### A

Here, the district court incorrectly applied the legal standards in determining the existence of the *Darden* factors relating to (1) the skill required of an agent and (2) the hiring and paying of assistants. Had the court applied those standards properly, it would have found that those factors actually favored independent-contractor status. We analyze each of those factors below.[4]

---

[4]Since we do not find that the district court applied an improper legal standard to any of the other *Darden* factors, we do not address them here.

The first factor under *Darden* looks to "whether the skill [required of an agent] is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere." *Weary*, 377 F.3d at 532 (Clay, J., dissenting); *see also Janette*, 298 F. App'x at 474. The district court held that the "amount of skill" factor under *Darden* weighs "slightly in favor of employee status" primarily on the basis that American Family "sought out potential agents who were untrained." In doing so, the district court erred.

This circuit has previously held that the skill required of insurance agents weighs in favor of independent-contractor status because "the sale of insurance is a highly specialized field" that requires "considerable training, education, and skill." *Weary*, 377 F.3d at 526–27 (internal quotations omitted). The skill inquiry centers on whether the skill is an independent discipline that "could be" learned elsewhere. *Id.* at 532 (Clay, J., dissenting). Though American Family preferred hiring untrained, and often unlicensed, agents, the underlying discipline of selling insurance remains the same regardless of American Family's hiring preferences. *Ibid.* ("[B]ecause the skill of selling insurance is a general one, the majority may be correct in its conclusion that this factor favors independent contractor status."). The district court therefore misapplied the legal standard to the facts; the correct application would have weighed this factor in favor of independent contractor status, as this circuit has done previously.

*Darden*'s eighth factor examines "the hired party's role in hiring and paying assistants." *Darden*, 503 U.S. at 323–24. The court mistakenly weighed this factor as "neutral" after concluding that the agents "had primary authority to hire their own staff" and were solely responsible for all "staff compensation matters."

The district court found, as a factual matter, that American Family agents were responsible for paying their own staff, determining and paying for any benefits and taxes associated with that staff, and deciding whether to classify their staff as employees or independent contractors. While American Family provided "pre-approved" candidates, whom the agents could select as their staff, it did not require the agents to hire these pre-screened candidates. Agents also had sole discretion in staff-compensation matters and the sole responsibility to withhold and remit taxes to the federal government as the employers of their staff.

On the other hand, American Family imposed qualifications on appointed agency staff, including state licensure, clean driving records, education levels, credit history, and minimum income-to-debt ratios. American Family did not provide computer access to any non-approved appointed agency staff and required agency staff to agree to a lifetime non-solicitation agreement. American Family had the right to fire any agency staff, appointed or non-appointed, who did not live up to the American Family Code of Conduct, and it retained the right, although rarely exercised, to fire agency staff for any reason. American Family managers were also evaluated on the number of staff employed by their agents and would sometimes offer monetary subsidies to agents to hire more staff.

Considering all of these facts, the district court determined that "[a]lthough American Family retained some right to override an agent's hiring and firing decision, on balance, agents had primary authority over hiring and paying their assistants." Yet the court inexplicably concluded from that finding that the factor was "neutral." This conclusion was contrary to *Darden*'s language. If the hired party has the "primary authority over hiring and paying its own assistants," the *Darden* factor regarding "the hired party's role in hiring and paying assistants" should weigh in favor of independent-contractor status. *Janette*, 298 F. App'x at 475–76 (Because plaintiff "could have hired assistants, at her expense," the factor favored independent-contractor status.). Any other conclusion conflicts with *Darden*'s clear language.

B

Further, given our determination regarding the existence of each of the *Darden* factors,[5] the district court also erred by not properly weighing those factors that are particularly significant in the legal context of ERISA eligibility. *Darden* asks us to look at the "hiring party's right to control the manner and means by which the product is accomplished," which we have determined to be "a broad consideration that is embodied in many of the specific factors articulated" there. *Weary*, 377 F.3d at 525. But "the relative weight given each [*Darden*] factor may differ depending upon the legal context of the determination." *Ware*, 67 F.3d at 578. In particular, "control and supervision is less important in an ERISA context, where a court is

---

[5]That is to say, whether each *Darden* factor favors independent-contractor or employee status.

determining whether an employer has assumed responsibility for a person's pension status." *Ibid*. Because ERISA cases focus on the financial benefits that a company should have provided, the *financial structure* of the company-agent relationship guides the inquiry. Here, the *Darden* factors that most pertain to that financial structure favor independent-contractor status and, accordingly, carry more weight in the ERISA context.

In this case, the district court found that the insurance agents invested heavily in their offices and instrumentalities, paid rent and worked out of their own offices, earned commissions on sales, were not eligible for employment benefits, and paid taxes as independent contractors. Accordingly, the court weighed factors two (the source of the instrumentalities and tools), three (the location of the work), seven (method of payment), eleven (provision of employee benefits), and twelve (tax treatment) in favor of independent-contractor status.[6] We have now corrected the district court's weighing of factors one (the skill required) and eight (the hired party's role in hiring and paying assistants) to favor independent-contractor status, as well. Because this inquiry exists in the legal context of ERISA benefits, this collection of factors—particularly the ones relating to the source of the instrumentalities and tools, the method of payment, the provision of employee benefits, and the agents' tax treatment—is especially important in determining the parties' financial structure. Accordingly, these factors should have carried greater weight in the district court's final analysis. Had the court properly weighed those factors in accordance with their significance, it would have determined that the entire mix of *Darden* factors favored independent-contractor status.

As further evidence of the financial structure of the parties' relationship, the lower court should have also given greater weight to the parties' express agreement. In determining the parties' relationship in the *Darden* context, we have several times "look[ed] to any express agreement between the parties as to their status as it is the best evidence of their intent" and placed great weight on that agreement. *Janette*, 298 F. App'x. at 471; *Weary*, 377 F.3d at 525 (noting that the existence of a contract characterizing Weary as an independent contractor is

---

[6]The district court weighed the "method of payment" factor in favor of independent-contractor status for agents "once they began selling policies out of their own office." During the agents' "training period," the court weighed the factor in favor of employee status.

"certainly relevant to the inquiry" and shows "how the parties themselves viewed the nature of their working relationship"). Our sister circuits have adopted this approach, as well. See *Brown v. J. Kaz., Inc.*, 581 F.3d 175, 181 (3d Cir. 2009) (noting that an independent-contractor agreement "is strong evidence" of independent-contractor status); *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 487 (8th Cir. 2000) (same). A written contract shows "how the parties themselves viewed the nature of their working relationship" and therefore carries great— but not dispositive—weight in determining an independent-contractor relationship. *Weary*, 377 F.3d at 525.

The Agent Agreement governing the parties' business relationship here indicates that they structured their relationship so that the agents should be treated as independent contractors. Each Agreement contained a paragraph either identical to or substantively similar to the following:

> It is the intent of the parties hereto that you are not an employee of the Company for any purpose, but are an independent contractor for all purposes, including federal taxation with full control of your activities and the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of this agreement. As an independent contractor you are responsible for your self-employment taxes and are not eligible for various employee benefits such as Workers and Unemployment Compensation.

The Agreement also provides that:

> Rates, rules, regulations and all provisions contained in the Company's Agent's Manuals and all changes to them shall be binding upon you. If any inconsistency or ambiguity exists between this agreement and such rate, rule, regulation, provision or other statement or statements, whether written or oral, *this agreement shall control*.

(emphasis added). The Agency Agreement therefore states in wholly unambiguous terms that agents are independent contractors who retain "full control" over several facets of their business.

The district court correctly recognized that the agreement favored independent-contractor status. But the court apparently did not weigh this important component when reaching its conclusion regarding independent-contractor status. Had the lower court given this express

agreement proper consideration, it would have further swung the balance in favor of independent-contractor status.

**IV**

This court has time and again declared insurance agents to have independent-contractor status—and appellees have presented no case in which we have not done so. *See, e.g., Weary,* 377 F.3d at 524; *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 251 (6th Cir. 1989). Some of our sister circuits have in fact already found American Family agents to be independent contractors in other contexts. *Wortham v. Am. Family Ins. Grp.*, 385 F.3d 1139, 1140–41 (8th Cir. 2004); *Moore v. Am. Family Mut. Ins. Co.*, No. 90-3107, 1991 U.S. App. LEXIS 13574, *3 (7th Cir. June 25, 1991). The plaintiffs have not shown that the facts here are so radically different from these cases to justify what would be a significant departure from these rulings, especially in the "legal context" of ERISA eligibility where we have held that "control and supervision is less important" than the financial structure of the parties' relationship. *Ware*, 67 F.3d at 578. Accordingly, we REVERSE and REMAND for further proceedings in accordance with this holding.

––––––––––––––––––

**DISSENT**

––––––––––––––––––

CLAY, Circuit Judge, dissenting. The only issue in this interlocutory appeal is whether Plaintiffs are "employees" or "independent contractors" for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. The majority holds that Plaintiffs are independent contractors based on its analysis of the factors set forth by *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). However, because the majority (1) adopts an incorrect standard of review for district court determinations regarding whether and to what extent the *Darden* factors support employee or independent contractor status; (2) incorrectly analyzes *Darden* factors one and eight; and (3) incorrectly weighs the *Darden* factors, I respectfully dissent.

## I.    Background

American Family Insurance Company (hereinafter referred to as "American Family" or "Defendants") is an insurance company "whose business is selling insurance." (RE 320, District Court Opinion, PageID # 20949.)[1] Unsurprisingly, American Family's insurance agents "are core to [this] business." (*Id.*) Over the last five years, American Family's insurance agents have brought in 85% of American Family's insurance premiums—approximately $5.1 billion. Yet, American Family does not provide its agents with numerous health, welfare, and retirement benefits, including "a retirement plan, 401K plan, group health plan, group dental plan, group life plan, and long-term disability plan." (*Id.* at PageID # 20945.) American Family claims it is not required to provide these benefits because it classifies its insurance agents as independent contractors, not employees, relieving it of all ERISA obligations.

Plaintiffs represent a class of some 7,200 current and former American Family insurance agents seeking ERISA benefits who challenge that classification. Plaintiffs argue that the circumstances of their relationship with American Family demonstrate that they are employees,

––––––––––––––––––

[1]Except as otherwise indicated, record citations refer to the record in district court action No. 13-cv-00437.

regardless of what American Family chooses to call them. Accordingly, the district court bifurcated this case to determine at the outset whether Plaintiffs are employees or independent contractors for purposes of ERISA.

A twelve-day trial before an advisory jury ensued. Twenty-seven witnesses were called, and extensive documentary evidence was submitted. At the conclusion of the trial, the advisory jury unanimously concluded that Plaintiffs were employees. Though it was not bound by the jury's verdict, the district court reached the same conclusion.

In reaching that conclusion, the district court relied on the factors articulated in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) for determining whether an individual is an employee or an independent contractor. The *Darden* factors include:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hiring party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24. This Court has also held that an express agreement between the parties is a relevant factor. *See Weary v. Cochran*, 377 F.3d 522, 525 (6th Cir. 2004). The crux of this test is "the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323.

Although the majority reaches a different conclusion than did the advisory jury and the district court, it disagrees with only a few aspects of the district court's analysis of the *Darden* factors. Because I agree with the advisory jury and the district court, this dissenting opinion will address only those *Darden* factors that the majority discusses. The district court's well-reasoned opinion speaks for itself as to the remaining *Darden* factors.

Before addressing the majority's discussion of the *Darden* factors, a preliminary issue must be resolved.

II.     **Standard of Review and Legal Framework**

As the majority explains, this case requires us to adopt a standard of review for district court determinations regarding the existence and degree of the *Darden* factors—that is, whether and to what extent each factor supports employee or independent contractor status. Plaintiffs assert that these determinations are findings of fact typically reviewed for clear error, while Defendants assert that they are conclusions of law typically reviewed *de novo*. The Sixth Circuit has yet to explicitly address this issue, and our cases implicitly addressing this issue fail to provide a clear answer. *Compare Peno Trucking, Inc. v. Comm'r of Internal Revenue*, 296 F. App'x 449, 454–60 (6th Cir. 2008) (reviewing for clear error, without much discussion) *with Janette v. Am. Fidelity Grp., Ltd.*, 298 F. App'x 467, 472–76 (6th Cir. 2008) (reviewing *de novo*, without much discussion). Accordingly, it might be helpful to consider cases from other circuits.

Four circuits have explicitly addressed this issue, and all four held that the existence and degree of each *Darden* factor constitutes a finding of fact reviewed for clear error. *See Berger Transfer & Storage v. Cent. States Pension Fund*, 85 F.3d 1374, 1377–78 (8th Cir. 1996); *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988); *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043–44 (5th Cir. 1987).[2]

The Fifth Circuit's reasoning in *Mr. W Fireworks* is particularly instructive. In that case, the court explained that "[t]here are . . . three types of findings involved in determining whether one is an employee within the meaning of the [Fair Labor Standards] Act." 814 F.2d at 1044. "First, there are historical findings of fact that underlie a finding as to one of [the factors]." *Id.* These are undisputedly reviewed for clear error. "Second, there are those findings as to [the factors] themselves." *Id.* These findings are "plainly and simply based on inferences from [the historical] facts and thus are [also] questions of fact that we may set aside only if clearly erroneous." *Id.* "Finally, the district court must reach an ultimate conclusion that the workers at issue are 'employees' or 'independent contractors'" *Id.* at 1045. This is undisputedly reviewed *de novo*, as "[t]he ultimate finding as to employee status is not simply a factual inference drawn

---

[2]Those cases that pre-date *Darden* address the same issue with regard to the *Darden* factors' predecessor, the *Silk* factors. *See United States v. Silk*, 331 U.S. 704 (1947), *abrogated by Darden*, 503 U.S. at 525.

from historical facts [like the findings as to the factors themselves], but more accurately is a legal conclusion based on factual inferences drawn from historical facts." *Id.*

The reasoning of the Second, Fifth, Eighth, and Tenth Circuits is sound. "The existence and degree of each [*Darden*] factor [are] question[s] of fact" because they are based on simple inferences drawn from underlying historical findings of fact. *Berger Transfer*, 85 F.3d at 1377–78. For instance, *Darden* factor five is "whether the hiring party has the right to assign additional projects to the hired party." *Darden*, 503 U.S. at 323–24. A finding that this factor supports employee status is based on a simple inference from a finding that "the hiring party had the right to assign additional projects to the hired party." *See Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1096 (6th Cir. 1995). Thus, the two findings should both be subject to the clear error standard of review.

The majority's contrary holding—that "[e]ach *Darden* factor is . . . itself a 'legal standard' that the district court is applying to the facts"—is belied not only by the unanimity of other circuits that have addressed this issue, but also by the cases on which it purports to rely. The majority's reliance on my dissent in *Weary v. Cochran*, wherein I referred to *Darden* factor one as a "legal issue," is misplaced. 377 F.3d 522, 532 (6th Cir. 2004). Needless to say, it is the majority opinion in *Weary* that binds this Court, including myself, no matter what is said in the dissent.**3** *See Johnson v. Doodson Ins. Brokerage, LLC*, 793 F.3d 674, 677 (6th Cir. 2015). The majority then cites *Ware v. United States*, in which this Court distinguished the "facts and circumstances" of an employment relationship from "the legal meaning and weight that those facts should be given." 67 F.3d 574, 576 (6th Cir. 1995). But the "legal meaning" that the *Darden* factors should be given—*i.e.*, whether Plaintiffs are employees or independents contractors for purposes of ERISA—and the "legal weight" that the *Darden* factors should be given—*i.e.*, which factors should be relied upon more than others and when—are both undisputedly conclusions of law reviewed *de novo*. *See Trs. of Resilient Floor Decorators Ins. Fund v. A&M Installations, Inc.*, 395 F.3d 244, 249 (6th Cir. 2005); *Hi-Tech Video Prods., Inc.*

---

**3**The majority cites various portions of my dissent in *Weary* a total of five times throughout its opinion. Such cherry-picking does nothing to increase the persuasiveness of the majority's reasoning, particularly to the extent that my dissent is at odds with controlling case law and the subsequent published decisions of this Court.

*v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1096 (6th Cir. 1995). Thus, the majority's reliance upon *Ware* misses the point. That case says nothing about the *existence and degree* of each *Darden* factor, a distinct, factual determination that should be reviewed for clear error.

The procedural posture of this case may help explain the difficulty with the majority's reasoning. Because this is an interlocutory appeal, we "have no authority to review the district court's findings of fact." *Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001). Consequently, a holding that the district court's determinations regarding the existence and degree of each *Darden* factor are findings of fact to be reviewed for clear error would, in this case, preclude any review of such determinations, and diminish the majority's ability to reverse a decision that the majority believes goes against the weight of authority.

## III.    Analysis of *Darden* Factors One and Eight

Even assuming arguendo that district court determinations regarding the existence and degree of each *Darden* factor constitute applications of law to fact that we have authority to review in this case, the majority incorrectly analyzes *Darden* factors one and eight, the only two factors on which the majority disagrees with the district court's analysis.

*Darden* factor one is "the skill required"—here, of an insurance agent. *Darden*, 503 U.S. at 323–24. And "the sale of insurance is a 'highly specialized field,' requiring considerable 'training,' 'education,' and 'skill.'" *Weary*, 377 F.3d at 527 (quotation omitted). However, that is not the end of the inquiry. Because "'skills are not the monopoly of independent contractors' . . . [i]t is also important to ask how the worker acquired his skill." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 809 (6th Cir. 2015) (quoting *Sec'y of Labor v. Laurtizen*, 835 F.2d 1529, 1537 (6th Cir. 1987)).[4] "[If] the company provides all workers with the skills necessary to perform the job, then that weighs in favor of finding that the worker is indistinguishable from an employee." *Id.* Accordingly, in *Keller*, this Court held that there was

---

[4]The Seventh Circuit has also recognized the importance of this question. *See Equal Emp't Opportunity Comm'n v. N. Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998) (explaining that the Seventh Circuit's *Knight* factors, in which the *Darden* factors are "subsumed," include "the kind of occupation and nature of skill required, *including whether skills are obtained in the workplace*") (emphasis added).

a genuine issue of material fact regarding the skill required of the plaintiff because "[the defendant] provided [the plaintiff] with the critical training necessary to do the work." *Id.*

It is undisputed that the same is true in this case. The district court found that "[Defendants] almost always hired untrained, and often unlicensed, agents and provided all the training they needed to be an American Family agent." (RE 320, PageID # 20972.) In fact, they "preferred to hire untrained agents so that they could be trained in the 'American Family' way." (*Id.* at PageID # 20972–73.) And "[i]f an agent had worked for a different company prior to being hired at American Family, they were re-trained in the ways of American Family agents upon hire." (*Id.* at PageID # 20973–74.) Thus, because "the company provide[d] all workers with the skills necessary to perform the job," the district court was correct in its determination that *Darden* factor one supports the status of Plaintiffs as employees. *Keller*, 781 F.3d at 809.

The majority's contrary holding—that "this factor [weighs] in favor of independent contractor status"—is again undermined by the cases on which it purports to rely. The majority reasons that "[t]he first factor under *Darden* looks to 'whether the skill is an independent discipline (or profession) that is separate from the business and could be (or was) learned elsewhere,'" and that the skill of an insurance agent "could be" learned elsewhere, but in doing so relies solely on the dissent in *Weary*.[5] And the dissent in *Weary* glaringly conflicts with this Court's subsequent decision in *Keller*, in which this Court clearly stated that "[if] the company provides all workers with the skills necessary to perform the job," *Darden* factor one supports employee status. *Keller*, 781 F.3d at 809. Whether those skills *could have* been learned elsewhere is irrelevant, and the majority's holding to the contrary flies in the face of binding precedent.

*Darden* factor eight is "the hired party's role in hiring and paying assistants." *Darden*, 503 U.S. at 323–24. The greater the role that the hired party plays, the more this factor supports

---

[5]The majority also cites this Court's unpublished decision in *Janette*, which quoted the same passage from the dissent in *Weary*. However, this Court in *Janette* cited that passage as though it were from the *majority* in *Weary*, failing to indicate "(Clay, J., dissenting)" after its pincite. *See* 298 F. App'x at 474. Thus, it is possible if not likely that this Court in *Janette* mistakenly believed it was quoting binding precedent as opposed to a non-binding dissent. Regardless, *Janette* itself is an unpublished and therefore non-binding decision. *See United States v. Yates*, 886 F.3d 723, 728 (6th Cir. 2017).

independent contractor status, and the greater the role that the hiring party plays, the more this factor supports employee status. *Weary*, 377 F.3d at 527.

In this case, the district court found that Plaintiffs "ha[d] primary authority to hire and fire their staff," but not "sole discretion" in doing so, and that they "ha[d] sole discretion in staff compensation matters." (RE 320, PageID # 20979.) Specifically, the district court found that Defendants played a role in hiring and firing Plaintiffs' staff (1) by "impos[ing] qualifications" on them, "including licensure, clean driving records, education levels, credit history, and minimum income to debt ratios;" (2) by requiring Plaintiffs' staff "to agree to a life-time non-solicitation agreement;" and (3) by "retain[ing] some authority to approve or disapprove of . . . agency staff selections, above and beyond the imposition of [these] qualification requirements." (*Id.*) This role included the ability of Defendants, without the consent of Plaintiffs, to "fire any agency staff . . . who did not live up to the American Family Code of Conduct." (*Id.*) Based on these facts, the district court determined *Darden* factor eight to be "neutral." (*Id.* at PageID # 20980.) I believe that *Darden* factor eight actually supports the status of Plaintiffs as employees.

The majority's contrary holding, that the district court *necessarily* should have determined that *Darden* factor eight supported independent contractor status because it found that Plaintiffs had "primary authority" over hiring and paying assistants, notably lacks any supporting authority. The majority cites only this Court's unpublished decision in *Janette*, in which this Court rejected the plaintiff's argument that she had "no hiring authority" because she "could have hired assistants." 298 F. App'x at 475. No role of the defendant in hiring and paying the plaintiff's assistants was discussed in that case, and it is thus inapposite.

The majority seems to ultimately rest its argument on its reading of the phrase "primary authority." But "primary" does not *necessarily* mean more than anyone else; rather, it also means first in time. *See, e.g.*, *Primary*, Oxford English Dictionary, http://www.oed.com/ (last visited December 21, 2018) ("Occurring or existing first in a sequence of events . . . ."); *Primary*, Merriam-Webster Dictionary, http://www.merriam-webster.com/ (last visited December 21, 2018) ("[F]irst in order of time or development."). And such usage by the district court when it found that Plaintiffs had "primary authority over hiring and paying assistants" would be entirely

consistent with the facts of this case, because Defendants retained "some authority to approve or disapprove" or to "override" an agent's staff selections *after* they had been made. (RE 320, PageID # 20979–80.)

## IV. Weight to be Afforded the *Darden* Factors

As previously discussed, "the crux of the *Darden* common law agency test is the hiring party's right to control the manner and means by which the product is accomplished." *Weary*, 377 F.3d at 525. Accordingly, "this Court has repeatedly held that the employer's ability to control job performance and the employment opportunities of the aggrieved individual are the most important of the many factors to be considered." *Marie v. Am. Red Cross*, 771 F.3d 344, 357 (6th Cir. 2014). In contrast, contractual labels assigned by the parties, while "certainly relevant," *Weary*, 377 F.3d at 525, are less important. *See, e.g.*, *Keller*, 781 F.3d at 804 ("[W]e must look to see whether a worker, even when labeled as an 'independent contractor,' is, as a matter of 'economic reality,' an employee."); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) ("Whether an employment relationship exists under a given set of circumstances is not fixed by labels that parties may attach to their relationship . . . .").

Recognizing this hierarchy of the *Darden* factors, the district court found that "[Defendants] and [their] agents entered into Agent Agreements . . . indicat[ing] that the parties intended for [the] agents to be treated as independent contractors." (RE 320, PageID # 20971–72.) However, the district court also found that "[o]ther internal documents . . . indicate that [Defendants] expected [their] sales managers to exercise control over agents' methods and manner of performing their services." (*Id.* at PageID # 20972.) For instance, "[Defendants'] training manuals actually refer to agents as 'employees.'" (*Id.* at PageID # 20983.) The district court then analyzed the remaining *Darden* factors, and determined that they were "almost evenly split between favoring employee status and favoring independent contractor status." (*Id.*). As a result, the district court turned back to "the most important of the many factors to be considered"—"[t]he employer's ability to control job performance and the employment opportunities of the aggrieved individual." (*Id.* at PageID # 20982.) (quoting *Marie*, 771 F.3d at 357).

The district court listed the numerous ways in which Defendants had the ability to control and did control Plaintiffs' job performance and employment opportunities. These include, but are not limited to, the following: (1) Plaintiffs did not own a book of business; (2) Plaintiffs did not own any policies; (3) Defendants unilaterally reassigned policies brought in by one agent to others; (4) Defendants could require Plaintiffs to service policies that they did not initiate, without any compensation; (5) Defendants did not allow Plaintiffs to sell insurance from other companies not financially connected to Defendants; (6) Defendants actively discouraged and in some cases prohibited Plaintiffs from taking on other employment, even if it was unrelated to insurances sales; (7) Defendants required Plaintiffs to sign a one-year non-compete agreement, and required Plaintiffs' staff to sign a lifetime non-compete agreement; and (8) Defendants trained their sales managers to believe they were Plaintiffs' bosses and had the authority to demand Plaintiffs' compliance—a belief which many acted upon. On these facts, and in accordance with this analysis, I agree with the district court that Plaintiffs are employees for purposes of ERISA.

The majority's holding to the contrary—that Plaintiffs are independent contractors for purposes of ERISA—is again undermined by the cases on which it purports to rely. The majority first reasons that "[b]ecause ERISA cases focus on the financial benefits that a company should have provided . . . the *Darden* factors that most pertain to financial structure . . . carry more weight," as opposed to the employer's ability to control job performance and the employment opportunities of the aggrieved individual. But in doing so, the majority relies solely on this Court's decision in *Ware*, in which this Court stated that "the relative weight given each [*Darden*] factor may differ depending upon the legal context of the determination." 67 F.3d at 578. This Court in *Ware* then elaborated that the traditionally important control factors are "more relevant in the context of copyright ownership." *Id.* While it also noted that the reverse may be true in the ERISA context—that the traditionally important control factors may be "less important," *id.*—such speculation was merely dicta, as *Ware* exclusively concerned employment status in the copyright ownership context, and had nothing to do with ERISA. *See United States v. Hardin*, 539 F.3d 404, 411 (6th Cir. 2008) (holding that language in a prior decision was dicta because it "was not necessary to the determination of the issue on appeal"). And "one panel of this [C]ourt is not bound by dicta in a previously published panel opinion." *United States v.*

*Burroughs*, 5 F.3d 192, 194 (6th Cir. 1993).  Moreover, this characterization of the speculation about ERISA in *Ware* is further supported by this Court's decision in *Simpson v. Ernst & Young*, an ERISA case decided the year after *Ware*, in which this Court reaffirmed "the employer's ability to control job performance and employment opportunities of the aggrieved individual as the most important of many elements to be evaluated" when determining that individual's employment status.  100 F.3d 436, 442 (6th Cir. 1996).

The majority also reasons that the district court "should have considered the parties' express agreement to be of greater force."  As briefly discussed above, this reasoning is unpersuasive because the district court properly considered the Agent Agreements as relevant but not dispositive evidence of independent contractor status.  No greater consideration was warranted, particularly given that the language in the Agent Agreements is contradicted by language in other internal documents, including Defendants' training manuals, and that contractual labels are particularly susceptible to manipulation such that over-reliance on them would "defeat the purpose" of ERISA. *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 575 (6th Cir. 2003); *see also Commodity Futures Trading Com'n v. Erskine*, 512 F.3d 309, 318 (6th Cir. 2008).

For all of the foregoing reasons, I respectfully dissent.